

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| HELEN D. MARK, | § | |
|     PLAINTIFF, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:09-CV-716-A |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
|     DEFENDANT. | § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

## I. FINDINGS AND CONCLUSIONS

A.    <u>Statement of the Case</u>

Plaintiff Helen Mark ("Mark") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits[1] under Title II and supplemental security income ("SSI") benefits[2] under Title XVI of the Social Security Act ("SSA"). On June 20, 2006, Mark filed an application for disability insurance benefits alleging that she became disabled

---

[1] Mark's insured status for disability insurance benefits expired on December 31, 2003. (Tr. 22, 100.)

[2] With respect to applications for SSI, the first month for which SSI benefits can be paid is the month after the SSI application was filed regardless of how far back in time disability may extend. 42 U.S.C. § 1382(c)(7); 20 C.F.R. § 416.335.

1

on April 2, 2002. (Transcript ("Tr.") 14, 22.) Thereafter, in September 2006, she filed an application for SSI benefits.[3] (Tr. 14, 97-99.) Her applications were denied initially and on reconsideration. (Tr. 14, 58-67, 70-77.) The ALJ held a hearing on April 4, 2008 and issued a decision on December 3, 2008 that Mark was not disabled. (Tr. 11-24, 25-53.) Mark filed a written request for review, and on October 1, 2009 the Appeals Council denied her request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1, 5-8.)

B.  Standard of Review

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920 (2009). First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work

---

[3] Between December 1988 and March 1993, Mark filed three other SSI disability applications. The ALJ did not reopen these prior applications, stating that they were "too remote to be subject to reopening." (Tr. 14.)

activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show that he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.*

This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

C. Issues

1. Whether Mark's case must be remanded for consideration of new and material evidence that she submitted to the Court after the ALJ's decision.

2. Whether the ALJ erred in failing to develop the record to obtain substantial evidence that Mark is able to continuously work at a job pursuant to Social Security Ruling ("SSR") 96-8p.

D. Relevant Administrative History

1. Hearing Before the ALJ

At the April 4, 2008 hearing, Mark testified that her stomach hurts when she sits down because she has a "Greenfield . . . filter that was put in [her] stomach when [she] had [her] accident in '88 [that] has broken off and gone into [her] stomach and [her] bowel." (Tr. 35.) She further stated that she was going to have surgery on April 23 to have part of her stomach and bowel removed and the filter shaved down. (Tr. 40-41.)

Mark's representative also represented that there were medical records from three different sources that had been requested but were not in Mark's file at the time of the hearing. (Tr. 48-49.) The ALJ agreed to leave the record open for three weeks so that the records could be received. (Tr. 48-49, 52-53.)

2. ALJ Decision

The ALJ, in his December 3, 2008 decision, stated:

> After the hearing, I held the record open to allow claimant, through her attorney, to submit additional medical evidence. Mr. Cook furnished records from

4

three sources and I have admitted them as exhibits c10-12f. However, I have not received records from Dr. Kumar, but claimant has neither requested an extension of time nor explained the failure to produce the records as promised. Therefore, I will issue this decision based on the evidence now of record: exhibits c2d, c1-11e, c1-12f, the other written exhibits that comprise the electronic, six-part modular disability folder and the hearing testimony.

(Tr. 14.) The ALJ found that Mark had not engaged in any substantial gainful activity since April 2, 2002, the alleged onset date of Mark's disability. (Tr. 22.) He further found that Mark had severe impairments, "including hepatitis C; osteoarthritis, with mild degenerative changes in the lumbar spine and osteopenia, with chronic pain; hypertension; chronic obstructive pulmonary disease; obesity; histories of a stomach acid inhibitor and deep vein thrombosis; and a mood disorder." (Tr. 22; *see* Tr. 15-16, 19-20.) He held, however, that none of Mark's impairments or combination of impairments met or equaled any impairment found in the Listing. (*Id.*)

In evaluating Mark's subjective complaints, the ALJ stated:

Ms. Mark testified she has had osteoarthritis in her hips after a 1988 motor vehicle accident, but she returned to work after recovery . . . and she has reported she contracted hepatitis C, which still leads to weakness, fatigue and flue-like [sic] symptoms. At the hearing, she stated that she quit working on or about the April 02, 2002 after she got sick with acute mononucleosis and she has more recently developed chronic pain in her lower back, right hip and right shoulder. She described the pains as severe and chronic as she testified she can sit for one or two hours per day, if she forces herself, and she sits with her feet elevated to prevent swelling caused by a broken filter in her stomach, but the leg pains increase when she sits for too long. . . .

Claimant testified she had surgery to correct the filter problem about a week or so before the hearing and will probably require [a] second procedure.

(Tr. 16 (internal citations omitted).)

The ALJ then determined that Mark had the physical residual functional capacity ("RFC") "for the sustained performance of a wide range of sedentary work activities: she cannot walk for

prolonged periods in excess of fifteen continuous minutes." (Tr. 22; *see* Tr. 19.) As to her mental RFC, the ALJ found that Mark was "limited to work at the low end of the detailed instruction level and she can have only incidental contact with the public." (Tr. 23; *see* Tr. 20.) Based on this RFC assessment, the ALJ opined that Mark was not able to perform her past relevant work but there were jobs that existed in significant numbers in the national economy that she could perform. (Tr. 23; *see* Tr. 20-22.) Consequently, the ALJ found Mark was not disabled. (Tr. 22-23.)

E.  Discussion

1.  New and Material Evidence

As an Appendix to her brief, Mark submitted several medical records to the Court that were not in the record before the ALJ or the Appeals Council. The first set of records indicated that Mark was admitted to the hospital on April 22, 2008 to have an "exploratory laparotomy repair of the duodenum secondary to IVC filter perforation of the duodenum." Pl.'s App. to Br. ("Pl.'s App.") at 1; *see* Pl.'s App. at 1-4.[4] The records indicate Karen Mcquade, M.D. ("Mcquade"), performed the surgery on April 23, 2008. Mcquade removed the section of the IVC filter sticking into the duodenum and left the remainder of the filter in place. Pl.'s App. at 3-4. The records indicate that the "patient did well," and Mark was discharged on April 29, 2008. Pl.'s App. at 1. Mark's discharge summary stated that she was to have no weight bearing activity and was to follow up with "PCP in 1 week." Pl.'s App. at 2.

The second set of records showed that Mark was admitted to the hospital one week later on May 6, 2008 for low blood pressure. Pl.'s App. at 5. Mark was treated with IV antibiotics and

---

[4] Apparently, Mark was in a car wreck in 1988 and "had an IVC filter placed in addition to an exploratory laparotomy" as a result of injuries sustained in the accident. Pl.'s App. at 3; *see* Tr. 35. Mark was having abdominal pain and "on CT scan she was shown to have a Greenfield filter that was eroding into her duodenum." Pl.'s App. at 3.

fluids and given blood transfusions "secondary to anemia." Pl.'s App. at 5. She was discharged on May 12, 2008 and diagnosed with septic shock,[5] hypotension,[6] pneumonia, anemia, and hypokalemia.[7] *Id.* Mark's discharge summary indicates that she was stable upon discharge, was instructed to follow a low-salt diet, could perform activity "[a]s tolerated," and was to follow up with her primary care physician in one week. Pl.'s App. at 5-6.

The third set of records show that Mark was seen on June 2, 2008 at the Tarrant County Hospital District for a follow-up appointment with Michael Vaughan ("Vaughan"), M.D. Pl's App. at 7. She reported she felt that her heart beat quickly and "has felt fairly well since she was discharged from the hospital on May 12, 2008." Pl.'s App. at 7. Under the "Impression" section of the treatment notes, Vaughan stated that Mark had a "[s]ensation of tachycardia" and a "[r]ecent episode of septicemia, currently resolved." Pl.'s App. at 8. Mark was instructed to follow up with the cardiology clinic in three months for an EKG. Pl.'s App. at 8.

The fourth set of records appears to show that on June 30, 2008 Mark underwent a blood transfusion in connection with a diagnosis of anemia. Pl.'s App. at 9-10.

Mark argues that the above-described medical records are "new and material" evidence, and, thus, require the Court to remand the case for consideration of this evidence. Specifically, Mark claims that such evidence is new because it had not been previously considered by the Appeals Council or the ALJ. Pl.'s Br. at 5. Mark argues that such evidence is also material because it

---

[5] Septic shock is "shock associated with overwhelming infection." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1728 (31st ed. 2007).

[6] Hypotension is abnormally low blood pressure. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 919 (31st ed. 2007).

[7] Hypokalemia is "abnormally low potassium concentration in the blood." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 915 (31st ed. 2007).

"relates to the time period for which disability was denied because it reveal[ed] a problem with a medical procedure previously performed for treatment of symptoms of a disabling condition," and "described ongoing complications of a surgery performed during the period of time that preceded the date of the judge's decision, but after the record had been closed for submission of evidence." Pl.'s Br. at 5-6. Mark also argues that there is a reasonable probability that this evidence would change the outcome because it shows that "she was so sick that she obviously could not have reported to work at a job" and could not have attended work at a job on a continuing basis as required under SSR 96-8p. Pl.'s Br. at 6. Mark states that she had good cause for not providing this evidence at the hearing because the "judge limited the time and the scope of the evidence that could be presented after the hearing to a period of 3 weeks for submission of evidence from 3 doctors, Dr[.] Zye, Dr[.] Herrera and from a psychiatrist." Pl.'s Br. at 6.

"When new evidence becomes available after the Secretary's decision and there is a reasonable probability that the new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (citing 42. U.S.C. § 405(g) & *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994)). The Court does not issue factual findings on new medical evidence but is to determine whether to remand for the consideration of the newly presented evidence. *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989). "To justify a remand, 42 U.S.C. § 405(g) requires that the evidence is 'new' and 'material' as well as a showing of 'good cause' for failing to provide this evidence at the original proceedings." *Ripley*, 67 F.3d at 555. To be new, the evidence must not be merely cumulative of the evidence already in the administrative record. *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989). For evidence to be material, it must relate to the time period for which

disability benefits were denied and there must be a reasonable probability that the new evidence would change the outcome of the Commissioner's decision. *Ripley*, 67 F.3d at 555; *see Sullivan*, 884 F.2d at 803.

The first issue is whether the medical records submitted by Mark with her brief are new or are merely cumulative of the evidence already in the administrative record. After reviewing the medical records submitted by Mark, the ALJ's decision, and the evidence in the record before the ALJ, the Court concludes that the recently submitted medical records are not new. As to the evidence that Mark had surgery to remove part of the IVC filter stuck in her duodenum, the ALJ was aware this filter was causing Mark to have abdominal pain and that she was going to have this surgery to "correct the filter problem."[8] (Tr. 16; *see* Tr. 35.) As to the evidence that Mark was suffering from low blood pressure and anemia, Mark testified at the hearing before the ALJ that she had been anemic since September 2007 and the anemia caused her to become extremely tired. (Tr. 31-32.) In addition, there is evidence in the record that she had previously been diagnosed with anemia. (*See, e.g.*, Tr. 429.) As to the evidence from the June 2007 follow-up visit, this record indicates that Mark has felt fairly well since she was discharged from the hospital in May and is feeling much better and the evidence does not definitively diagnosis Mark with any new condition but notes a "sensation" of tachycardia. Furthermore, there is evidence in the record that she had previously been diagnosed with tachycardia. (*Id.*)

---

[8] In his decision, the ALJ referenced both an upcoming surgery and a recent past surgery to "correct the filter problem." The reference to a recent past surgery appears to be a misinterpretation of Exhibit c10f (Tr. 369-73), which seem to be medical records diagnosing the IVC/stomach issue and the need for surgery. Any error, however, is harmless as the ALJ's decision clearly took into account the existence of Mark's stomach issue and the need for surgery.

9

Even assuming the evidence recently submitted by Mark was new, the Court also finds that the evidence is not material as there is not a reasonable probability that the new evidence would have affected the outcome of the ALJ's decision. Mark argues that her "repeated hospitalizations following the surgery show that she was so sick that she obviously could not have reported to work at a job" on a continuing basis as contemplated by SSR 96-8p. The Court disagrees.

Pursuant to SSR 96-8p, the ALJ "must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule)." SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996). In this case, the ALJ, in his RFC assessment, cited to SSR 96-8p and specifically "concluded that the claimant has the exertional capacity for the sustained performance of a wide [sic] sedentary work duties." (Tr. 19.)

Mark appears to be arguing that the newly submitted evidence shows that such a determination was not supported by substantial evidence. Mark's hospitalizations do not, however, show that she was incapable of performing work on a continuing basis. Instead, they show, *inter alia*, that she was hospitalized in April 2008 for a one-time procedure of removing a portion of an IVC filter. Upon Mark's April 29, 2008 release from the hospital, she was initially restricted to no weight bearing activity. However, on May 12, 2008, just two weeks later, she was told she could perform all activity "[a]s tolerated." Furthermore, none of the recently submitted records, including the medical records from June showing that Mark was seen for a follow-up appointment and a blood transfusion, indicate that she suffered from a new impairment that had not already been considered by the ALJ nor that such impairment has lasted or is expected to last for at least twelve

consecutive months. *See* 20 C.F.R. §§ 404.1505(a), 416.905(a). Because the evidence submitted by Mark is not new or material, the Court concludes remand is not required.

2. <u>Duty to Develop Record</u>

The next issue is whether the ALJ erred in failing to develop the record relating to whether Mark had the ability to "sustain work activity for 8 hours per day, 5 days a week as contemplated by SSR 96-[8]p."[9] Pl.'s Br. at 7. Specifically, Mark complains that the ALJ erred by "closing the record 3 weeks after the hearing" instead of "continu[ing] to develop the evidence during the 8 month period between the time of the hearing on April 4, 2008 and the date of the [ALJ's] decision on December 3, 2008. Pl.'s Br. at 7.

The Fifth Circuit imposes a duty on the ALJ to fully and fairly develop the facts relative to a claim for benefits. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000) (citing *Ripley*, 67 F.3d at 557). When the ALJ fails in this duty, he does not have before him sufficient facts on which to make an informed decision and his decision is not supported by substantial evidence. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). "Nonetheless, reversal is appropriate only if the claimant shows that he was prejudiced as a result of the insufficient record." *Hudspeth v. Astrue*, No. 4:09-CV-156-Y, 2010 WL 3033891, at *12 (N.D. Tex. July 2, 2010); *see Kane*, 731 F.2d at 1220. "To establish prejudice, a claimant must show that he 'could and would have adduced evidence that might have altered the result.'" *Brock*, 84 F.3d at 728 (quoting *Kane*, 731 F.2d at 1220).

---

[9] In her brief regarding this issue, Mark cites to both SSR 96-8p and SSR 96-5p. *Cf.* Pl.'s Br. at 1 (citing to SSR 96-8p) *with* Pl.'s Br. at 7 (citing to SSR 96-5p). After a review of both SSRs and the arguments presented by Mark, the Court assumes the reference to SSR 96-5p was a typographical error.

11

In this case, contrary to Mark's claims, the ALJ did not "close" the record three weeks after the hearing and refuse to accept any other evidence. Based on statements by Mark's representative at the hearing before the ALJ that there were some records missing from the administrative record, the ALJ specifically agreed to hold the record open for three weeks so that Mark could submit such records. The ALJ did not prohibit Mark from submitting any other records or indicate that he would not consider any other evidence that was submitted. Furthermore, as discussed above, Mark has failed to produce any evidence that might have altered the ALJ's decision. Consequently, the Court concludes that the ALJ did not err in failing to properly develop the record and remand is not required.

## II. RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## III. NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The Court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until December 29, 2010. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a

12

proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## IV. ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until December 29, 2010 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED December 8, 2010.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv

13